LOTTINGER, Judge.
The trial judge in his written reasons for judgment has so carefully and correctly disposed of the issues raised by this appeal that we adopt his opinion as our own. It reads:
“This is a tort action which resulted from an accident that happened on September 22, 1956, at the Gaylord Container parking lot in the city of Bogalusa. Involved in the accident was an automobile driven by D. P. Maples and the plaintiff in this suit, Woodrow W. Warner. The defendant Millers Mutual Fire Insurance Company of Texas was the liability insurer of Mr. Maples at the time of the accident; Mr. Maples is not a party to the suit.
“The allegations of the petition show that the Gaylord Container parking lot is a commonly used parking lot for the employees of Gaylord Container Corporation, and at the time of the accident numerous cars and trucks were parked throughout this parking area. It is further alleged that the parking lot was so laid out that there were several lanes extending in a northerly and southerly direction between Fourth Street on the north and Fifth Street on the south, lying between Avenue S on the west and Avenue T on the east, with specific area on both the east and west sides of each of such traffic lanes being reserved for motor vehicles to park therein.
“On the date of the accident it is alleged that the petitioner had left his work in the mill and was proceeding down the east side of Avenue S in a southerly direction, and turned in an easterly direction between the Credit Union building and the Acme canteen lunch stand in order to reach his automobile which was parked in the parking lot; that when he reached a point about 25 feet south of the southeast corner of the Acme canteen lunch stand he was struck by the front end of a 1953 Ford automobile operated by D. P. Maples, the defendant’s assured, which resulted in painful and permanent injuries to the petitioner. It is alleged that the defendant’s assured, Maples, was negligent in the following respects: (1) failing to stop at a commonly used cross walkway in a parking lot; (2) failing to sound his horn before proceeding into an area which he knew was used by numerous pedestrians going to their automobiles; (3) failing to see the plaintiff until after the time of the impact; (4) failing to have his lights on in rainy and stormy weather; (5) driving too fast in a heavily congested parking area where Maples should have known that numerous workers were moving in all directions to their automobiles; (6) failure of Maples to keep a proper lookout; (7) his failure to take proper precautions and using due care during the noon hour rush; (8) operating his automobile in a careless, negligent and reckless manner in an area of necessity used by the employees in reaching their parked automobiles, and (9) moving out of his lane of traffic and striking the petitioner. The petition further sets forth in the alternative, and only in the event the Court should find the plain-iff was negligent in any manner, that the defendant’s assured, Maples, had the last clear chance to avoid the accident by the use of proper care in keeping a proper lookout.
“Defendant in its answer denied its assured Maples was guilty of any negligence, and in the alternative, pleaded the plaintiff’s contributory negligence as a bar to his recovery; in the further alternative, defendant pleaded that the plaintiff had the last clear chance to avoid the accident and it was plaintiff’s negligence in failing to exercise same that constituted the proximate and immediate cause of this accident.
“The facts in this case show that this-accident happened shortly after the noon hour on September 22nd, 1956, at which' time it was raining; many of the employees-of Gaylord Container Corporation had- *844 stopped in the time office building after getting off for the noon hour; among these employees was the plaintiff, as well , as the defendant’s assured Maples, and Hubert Strahan; it seems that Maples and Strahan left the time office building first ■and proceeded down Fourth Street, which borders the Gaylord Container parking lot ■on the north, which parking lot was a distance of about one-third of a block from the time office building; their purpose was to get-into Maples’ car which was parked in the northern portion of the parking lot; immediately after they had left the time office building, the plaintiff, Mr. Warner, also left and proceeded from the time office building south down “S” street, which is on the west side of said parking lot; when he reached a point immediately south of what is known as the Acme canteen building situated in this parking lot, he turned east in order to reach his automobile which was parked about the middle of the lot and on the eastern side of the traffic lane which ran in a northerly and southerly direction through said lot; cars, of course, were parked on both the eastern and western side of this traffic lane, and when Mr. Warner reached a point some twenty to twenty-five feet south of the Acme canteen building and the eastern side of the traffic lane, the car driven by Maples struck him, breaking his leg in four places and causing severe permanent injuries.
"The facts reflect that while Mr. Warner was proceeding from the time office building to the point where he was struck that he was running with a large piece of Kraft paper held about six inches over his head with each of his hands, in order to keep from being wet by the rain. His testimony is to the -effect that he ran until he reached a point even with the south end of the Acme 'Canteen building and continued in a fast walk until the time he was struck; the distance from the south end of the Acme canteen building to the eastern edge of the traffic lane is shown to be 13 feet. It is further shown that on the eastern side, at the southeast corner, of the said Acme canteen building, a panel truck was parked some two feet east of the building and with the front of said truck in line with the southern edge of the building; this was a panel truck and was testified to have been about eight feet in width. It is further shown that on the south side of this Acme canteen building there was an automobile parked some 2 feet south of the building and almost even with the eastern edge of the Acme canteen building — of course, the Acme canteen building, together with the truck and car parked in the positions hereinabove related on the southeast corner of this building would necessarily obstruct the view of a person traveling south in the traffic lane some thirteen feet east of said building, in so far as seeing a person proceeding in an easterly direction some ten or twelve feet south of said Acme canteen building.
“When the defendant’s assured, Mr. Maples, and his passenger Hubert Strahan, got into Mr. Maples’ car at the northern end of said parking lot, Mr. Maples backed the car out and then proceeded south down the traffic lane in said parking lot; the car had traveled a very short distance, and as a matter of fact, was still in second gear and traveling, according to Mr. Maples and Mr. Strahan, at a rate of speed between fifteen and twenty miles per hour, and when it reached a point which I determine to be 22 feet south of the Acme canteen building, it struck Mr. Warner. The testimony of Mr. Strahan reflects that the car was traveling in the traffic lane south and when it reached a point where the front end of said car was even with the southern edge of the Acme canteen building, it was then that Mr. Strahan says he saw Mr. Warner, who was at that time some six feet east of the Acme canteen building and, of course, only about seven feet from the western edge of the traffic lane; Mr. Strahan’s testimony reflects he could not see Mr. Warner sooner due to the fact that his view was obstructed by the Acme canteen building and the cars parked at the *845 southeast corner thereof in the manner hereinabove related. He stated he hollered ‘ho’ when he saw Mr. Warner, who was either in a ‘dog trot’ or walking very fast, with the paper over his head, but within the next instant Mr. Maples’ car struck Mr. Warner, and at the time it was traveling between fifteen and twenty miles per hour. Mr. Strahan’s testimony further reflects that the Maples car was only three or four feet east of the panel truck parked at the southeast corner of the Acme canteen building when it passed said truck— thus, the panel truck would have necessarily obstructed his and Mr. Maples’ view. I further note from Mr. Strahan’s testimony that Mr. Warner was struck twenty-five or thirty feet south of the south edge of the canteen building, but in a statement he gave counsel for the plaintiff immediately after the accident he stated this distance was twenty feet. Mr. Maples, defendant’s assured, testified that he saw Mr. Warner a ‘split ’second’ before the collision occurred, however, in a statement which he gave to defendant’s counsel about a year after the accident, I note he said he never saw Mr. Warner before the car hit him, and that the first thing he noticed was Mr. Warner falling upon, or against, the hood after the car had struck him. Of course, the testimony of both Mr. Maples and Mr. Strahan is at variance with the statements they gave prior to the trial, and in reaching a conclusion in this case I have to take note of this, as well as the fact that after the accident Mr. Maples went to the hospital to visit the plaintiff and informed him he had liability insurance. Further than this, Mr. Maples and Mr. Strahan are fellow workers of Mr. Warner, and Mr. Maples is not a party defendant to this suit, his insurer alone being sued. Coming back now to an analysis of the testimony of both Mr. Strahan and Mr. Maples, I will first concern myself with that given by Mr. Strahan; his testimony is to the effect that at the time the Ford car struck Mr. Warner it was traveling between fifteen and twenty miles per hour; his testimony is to the further effect that the car traveled six or eight feet after the collision. Even if the car was traveling at a rate of speed of only fifteen miles per hour at the time it struck Mr. Warner, it would have been impossible for it to have stopped within a distance of six feet from the time it hit him — as a matter of fact, Mr. Warner testified the car stopped within two to four feet of the point where it hit him, and he could have reached out and touched the front bumper, or wheel, of the car — thus, I am of the opinion the car was not traveling at a greater rate of speed than five miles per hour when it struck Mr. Warner —apparently what Mr. Strahan meant was that when they were proceeding south of the Acme canteen building the car was traveling between fifteen and twenty miles per hour and it was undoubtedly at this time that Mr. Maples began applying the brakes to the Ford automobile. According to the speed chart in Vol. 9-C of Blash-field’s Cyclopedia of Law & Practice, Sec. 6237, p. 413, the total distance required to stop a car, with brakes in excellent condition, running at twenty miles, is at least forty feet, and running at a speed of fifteen miles per hour is roughly 28 feet. The point at which the witnesses, Mr. Kennedy and Mr. Ramsey show that Mr. Warner was picked up after the accident was fixed by them at 26 feet — thus, I fix the point at approximately twenty-two feet south of the Acme canteen building as to where this accident occurred, for the reason that I feel certain that the car was moving at a rate of speed of approximately five miles per hour at that time carrying the body of Mr. Warner some four or five feet — particularly is this true when it is shown he fell on the hood and rolled off the side thereof —thus, it is apparent to me that not only did Mr. Strahan see Mr. Warner when the Maples car was even with the south edge of the Acme canteen building, but Mr. Maples likewise saw him, for had he not done so, he would not have been able to have stopped his car twenty-six feet south of said building if he was running between *846 fifteen and twenty miles per hour when he reached a point even with the south edge of said building. Of course, the Blash-field chart above quoted shows that even at fifteen miles per hour it would have required 28 feet for Mr. Maples to have stopped his car, and the only reason he stopped it within a less distance, say twenty-six feet, was because of the impact with Mr. Warner’s body.
“There is a further dispute in this case as to the location of Mr. Warner after the accident. The witness Mr. Kennedy, who picked him up and placed him in the ambulance, testified that Mr. Warner’s feet were at the western edge of the traffic lane and his head and the remainder of his body .further ■ removed to the west — however, he admitted on cross examination that immediately after the accident he stated to defendant’s adjuster that Mr. Warner was in the western side of the traffic lane when he picked him up. Of course, it is plaintiff’s contention that the Maples automobile was out of the traffic lane at the time it struck Mr. Warner, but this is not borne out by the testimony of either Mr. Strahan or Mr. Maples, who were in the car at the time of the collision. I am convinced from the testimony that the car was in the traffic lane at the time of the collision and Mr. Warner had gotten into the traffic lane when he was hit. It is further apparent from Mr. Warner’s testimony that he never saw this automobile before it struck him, and his failure to see that which he should have seen constituted the negligence which was the proximate cause of this accident — thus, he cannot recover unless Mr. Maples, the driver of the automobile, had the last clear chance to avoid the accident. The last clear chance doctrine, of course, comes into play when the plaintiff has negligently placed himself in a situation of imminent peril and is either unconscious of the situation or unable to avoid the danger, but he may recover damages if the defendant could have avoided the injury after discovering plaintiff’s peril. (Blashfield’s Vol. 4, Sec. 2801, p. 386). Further, in order for this doctrine to apply the defendant must have had a last clear chance of avoiding injuring the plaintiff. Clear chance, of course, means in this respect a reasonable chance.
“From the above résumé of the testimony I am of the opinion that Mr. Maples, the driver of the assured automobile, saw Mr. Warner immediately after he ran out from the southeast corner of the Acme canteen building, which was as soon as he could have seen him, or otherwise he could not have stopped his car 26 feet south of the building while he was running at a rate of speed of between fifteen and twenty miles per hour. Under these circumstances, I feel that Mr. Maples did not have a last clear chance, or reasonable chance, of avoiding the accident, and accordingly, for that reason the last clear chance doctrine is not applicable herein. I have carefully read all the cases cited in plaintiff’s brief in connection with the last clear chance doctrine, and do not feel that any of them are applicable to the factual situation herein presented. Additionally, I do not feel that Mr. Maples was negligent in operating his car at a rate of speed of between fifteen and twenty miles per hour, and I am of the further opinion that the car was being operated in the traffic lane at the time of the collision. My conclusion is that Mr. Warner was not keeping a proper lookout and hastily entered the traffic lane immediately in front of this automobile at a time when defendant’s assured could not possibly have avoided hitting him. I recognize the fact that this was indeed an unfortunate accident, but irrespective of this fact, no person is entitled to recover when his injuries are brought about as a result of his own negligence, and the person operating the car which struck him had no last clear chance to avoid the accident.”
The judgment appealed from is affirmed.